UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

YULONDA J.,

    Plaintiff,

  v.

KILOLO KIJAKAZI,
  ACTING COMMISSIONER OF
  SOCIAL SECURITY,[1]

    Defendant.

No. 20 CV 726

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

    Plaintiff Yulonda J. brings this action for judicial review of the Social Security Administration's (SSA) decision denying her application for benefits. For the following reasons, plaintiff's request to reverse and remand the SSA's decision is granted, the Acting Commissioner of Social Security's motion for summary judgment [22][2] is denied, and the case is remanded to the agency for further proceedings.

## Background

    In April 2016, plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging a disability onset date of December 16, 2013. [11-1] 59. Plaintiff's claims were denied initially and on reconsideration. [*Id.*]. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on October 1, 2018. [*Id.*] 24-55. In a decision dated January 30, 2019, the ALJ found that plaintiff was not disabled and denied her applications. [*Id.*] 59-68. The Appeals Council denied review on December 5, 2019 [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff timely appealed to this Court

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [11], which refer to the page numbers in the bottom right corner of each page.

[1], and the Court has subject-matter jurisdiction to review the Acting Commissioner's decision under 42 U.S.C. § 405(g).[3]

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant can perform his past relevant work; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. *See* 20 C.F.R §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

## Discussion

### A. ALJ's Decision

At step one of his decision, the ALJ found that plaintiff had not engaged in substantial gainful employment since her alleged onset date. [11-1] 61. At step two, the ALJ found that plaintiff's degenerative disc disease was a severe impairment. [*Id.*] 61-62. At step three, the ALJ ruled that plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. [*Id.*] 64. Before turning to step four, the ALJ found that plaintiff has the residual functional

---

[3] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [6].

capacity to perform sedentary work, except that, throughout the workday, plaintiff required the option to stand for five minutes after sitting for 25 minutes. [*Id.*] 64-67. At step four, the ALJ found that plaintiff could perform her past relevant work as a shipping and receiving supervisor and an administrative assistant. [*Id.*] 67-68. Because that ruling meant that plaintiff was not disabled, *see* 20 C.F.R. § 404.1520(f), the ALJ did not proceed to step five.

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons. First, plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ did not (a) include a manipulative limitation in the RFC, (b) adequately explain why the sit-stand option accommodated her limitations, or (c) consider the effect of plaintiff's obesity. Second, plaintiff contends that the ALJ applied an incorrect standard when evaluating her subjective symptom allegations. Third, plaintiff argues that the ALJ misapplied the treating-physician rule in deciding that the opinions of her treating orthopedist, Dr. Mark Chang, were entitled to only little weight. The Court agrees with plaintiff that the ALJ erred in his evaluation of Dr. Chang's opinions, and that this error requires a remand for further proceedings.[4]

### B.     Substantial Evidence Does Not Support the ALJ's Determination That Dr. Chang's Opinions Were Entitled to Only Little Weight.

A "treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with the other substantial evidence in the record." *Sonji L. v. Kijakazi*, No. 19 C 4109, 2022 WL 672741, at *5 (N.D. Ill. Mar. 7, 2022); *see also* 20 C.F.R. § 404.1527(c)). This rule is premised on the treating physician's "greater familiarity with the claimant's condition and the progression of [her] impairments[.]" *D.K.H. v. Saul*, No. 19-cv-7755, 2021 WL 2566768, at *3 (N.D. Ill. Jun. 23, 2021).

"An ALJ must give good reasons for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal quotation marks omitted). Although the ALJ need only "minimally articulate" these reasons, the ALJ "must still support his conclusions with substantial evidence." *Stocks v. Saul*, 844 F. App'x 888, 892 (7th Cir. 2021). If the ALJ does not give controlling weight to a treating physician's opinion, the ALJ "must address the appropriate weight to give to the opinion." *Id.* (internal quotation marks omitted). Controlling regulations "require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott*, 647 F.3d at 740 (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1527(c). [5]

---

[4] Because this issue is dispositive, the Court need not address plaintiff's other arguments.
[5] The SSA has modified the treating physician rule to eliminate the "controlling weight"

3

### 1. The Treatment Relationship and Dr. Chang's Opinions

Dr. Chang was plaintiff's orthopedist for more than three years and continually treated her from March 2014 through April 2017. *See* [11-8] 784-96 (Chang's treatment notes from Mar. 20, 2014 through Nov. 11, 2014); [11-9] 797-817 (Chang's treatment notes from Jan. 15, 2015 through Apr. 26, 2016); [11-15] 1441-46, 1465, 1475 (Chang's treatment notes from Oct. 25, 2016 through Apr. 18, 2017). Chang also performed three spinal surgeries on plaintiff: an anterior diskectomy and fusion at the C6-C7 level in April 2014, a C6-C7 revision anterior decompression (necessitated by the failure of the hardware that had been implanted during the first fusion surgery) in March 2015, and a laminectomy at the L5-S1 level in August 2016. [11-7] 611; [11-8] 730-31; [11-15] 1409-11.

As relevant here, Dr. Chang completed two questionnaires–one titled "Spinal Disorders," the other "Arthritic Report (Degenerative or Inflammatory)")–on July 8, 2016. *See* [11-14] 1389-1394. In the former questionnaire, Chang opined that plaintiff (1) had been prescribed a cane, which was needed for long walks or walking on uneven terrain; (2) could not walk more than one block; (3) could sit for only five or ten minutes at a time before needing to assume a different position for relief; (4) had been treated with epidurals and Norco medication, but received only "marginal" relief; and (5) experienced stiffness and chronic pain. [*Id.*] 1389-91. In the latter questionnaire, Dr. Chang opined that, as a result of her C6-7 disc herniation and L5 disc degeneration, plaintiff (1) experienced pain, stiffness, fatigue, and atrophy; (2) had difficulties with thumb opposition in her right and left hands, which caused "significant limitations" with "repetitive reaching, handling or fingering," "[g]rasping, turning, twisting objects," and "waist level reaching," "shoulder level reaching," and "overhead reaching"; (3) required "a job which permits shifting positions at will from sitting, standing, walking" because of her "neck & lower back stiffness"; and (4) obtained only "marginal" relief from these treatments, which left plaintiff with "stiffness, persistent pain, weakness." [*Id.*] 1392-94.

Dr. Chang also opined that he considered plaintiff to be permanently disabled. On July 2, 2015–about three months after the March 2015 surgery–Chang found that plaintiff was "making very slow progress" with physical therapy and a home exercise program and had experienced "decreased range of motion of her neck" and "persistent neck pain." Concerned that plaintiff may have "permanent nerve damage" and "permanent neck pain and left arm pain despite all of her treatments," Chang stated that he "consider[ed] her to be permanently disabled" and "unable to return to work." [11-15] 1443. Then, on January 24, 2017, Dr. Chang found that plaintiff "has a lot of pain in the back and left leg and hip and is functioning poorly and has not been able

---

instruction for claims filed on or after March 27, 2017. *D.K.H.*, 2021 WL 2566768, at *3 n.2. Because plaintiff filed her applications before that date, the Court applies the prior version of the treating-physician rule.

to resume even light activities yet." [*Id.*] 1465. Chang reiterated his earlier conclusion that he "consider[ed] [plaintiff] to be permanently disabled." [*Id.*].

In determining plaintiff's RFC, the ALJ found that Dr. Chang's opinion was entitled to "little weight":

> Dr. Mark Chang, MD, opined that the claimant was permanently disabled as of July of 2015, and unable to return to work (7F/13). However, he had cleared her to return to work part-time, or to work from home, as far back as September of 2014 (3F/39-43). He does not give reason or rationale as to what conditions or accommodations the claimant needs to successfully return to work, that would be present in a home or part-time work situation. I give this opinion little weight. Dr. Chang is correct in the implied idea that the claimant needs some degree of accommodation. However, he gives no specifics as to what those would be, or why they might be present in part-time or at-home work, but not in her workplace as-is. Dr. Chang also opines at one point, that the claimant is permanently disabled (9F/14). This closely follows a period where he stated she could not return to work with some restrictions, and there is no corresponding report of a significant downturn in her condition. Subsequent exam notes demonstrate good strength, with normal sensation and no gait problems (14F/15).

[11-1] 66-67.

The Court concludes that the ALJ's reasons for discounting Dr. Chang's opinions have no substantial evidentiary support in the record. The Court further concludes that the ALJ did not adequately explain how he decided that Dr. Chang's opinions deserved only little weight.

### 2. Substantial Evidence Does Not Support the ALJ's Reasons for Discounting Dr. Chang's Opinions.

First, the ALJ seems to have concluded that Dr. Chang's July 2015 opinion that plaintiff was permanently disabled was not credible because it was inconsistent with his earlier conclusion, in September 2014, that plaintiff was "cleared" to perform either part-time or at-home work. But this conclusion is based on a serious factual error and otherwise makes no sense. Dr. Chang did not "clear" plaintiff to work part-time or work from home in September 2014. *See* [11-8] 794. Rather, after observing that plaintiff "has difficulty with even simple activities" and stating that he did "not feel it is safe for her to return to work yet," Chang noted that he had "asked [plaintiff] to look into parttime work from home for next month[.]" [*Id.*]. He then reiterated that plaintiff "should remain off work until follow up visit." [*Id.*]. In any event, there is nothing inconsistent between Chang's questioning whether, in September 2014,

plaintiff could work part-time or from home and his later opinion in July 2015 that plaintiff was permanently disabled. After all, plaintiff suffered from a degenerative condition, and there is no question that her spinal condition deteriorated after September 2014. To take but one obvious example, plaintiff underwent a second spinal surgery in March 2015 to repair the hardware that had been implanted during her first spinal surgery. [11-8] 730-31.

Second, the ALJ faulted Dr. Chang for not identifying "the conditions or accommodations the claimant needs to successfully return to work." [11-1] 66. This was not a good reason for discounting Chang's opinions, either. To begin, it was the ALJ's responsibility, not Dr. Chang's, to determine whether the limitations caused by plaintiff's degenerative disc disease could be accommodated in a work setting, such that plaintiff could perform substantial gainful employment. *See Thomas v. Kirk*, 745 F.3d 802, 808 (7th Cir. 2014) ("the determination of a claimant's RFC is a matter for the ALJ alone–not a treating or examining doctor–to decide"); *see* 20 C.F.R. § 404.1546(c) (ALJ is "responsible for assessing [claimant's] residual functional capacity"). Contrary to the ALJ's decision, moreover, Dr. Chang did explain why he thought plaintiff should explore working from home: Chang knew that plaintiff had "a long commute" to and from work, and he "was concerned about that." [11-8] 794. More importantly, the ALJ never addressed the two questionnaires that Dr. Chang completed in July 2018. There Chang identified the work-related limitations that he attributed to plaintiff's spinal problems, including limitations with walking, sitting, and lifting. *See* [11-14] 1389-1394. Yet the ALJ did not even include a citation to these critical records in his decision, let alone meaningfully consider whether they supported Dr. Chang's opinions. *See Angela O. v. Kijakazi*, Civil No. 4:21cv52, 2022 WL 1468252, at *5 (N.D. Ind. May 10, 2022) ("Meaningful review is not possible absent discussion of vital evidence.").

Third, the ALJ appears to have rejected Dr. Chang's January 2017 opinion that plaintiff was permanently disabled because (1) it "closely follows a period where he stated she could return to work with some restrictions," and (2) "subsequent exam notes demonstrate good strength, with normal sensation and no gait problems." [11-1] 67. Neither of these grounds provides a good reason for assigning less than controlling weight to Dr. Chang's opinions.

Regarding plaintiff's alleged ability to return to work, the ALJ did not cite anything in the record to support his assertion that Dr. Chang had cleared plaintiff to "return to work with some restrictions" "closely before" opining in January 2017 that she was permanently disabled. *See* [11-1] 67. The Court observes, moreover, that Dr. Chang's two most recent treatment notes, from July 2016 and October 2016, say nothing about plaintiff's ability to return to work. *See* [11-15] 1441-42. And for her part, the Acting Commissioner neither acknowledges this component of the ALJ's decision nor cites evidence to support the ALJ's statement that plaintiff was

6

supposedly able to return to work shortly before January 2017. *See* [23] 9-10. The ALJ's decision thus appears to rest on an additional mistake of fact.

As for the "subsequent exam notes," the ALJ observed that, during a September 11, 2017 evaluation by Dr. Konstantin Slavin, plaintiff had "good strength in both arms and legs," "normal sensation bilaterally," and no "ataxia or dysmetria." [11-16] 1517. The ALJ did not explain how or to what extent this single treatment note was inconsistent with Dr. Chang's opinions; the ALJ merely set forth a few of Dr. Slavin's findings, as if the basis for using them to discredit Dr. Chang's opinions was so obvious that no further explanation was needed. But "[t]he problem with the ALJ's reasoning" is that he "failed to sufficiently explain how" Dr. Slavin's treatment note "undermined the treating physician['s] opinions. An ALJ must build an accurate and logical bridge from the evidence to [his] conclusions so that the District Court may afford the claimant meaningful review of the SSA's ultimate findings." *Hurlburt v. Astrue*, No. 11 C 6099, 2013 WL 2285802, at \*6 (N.D. Ill. May 23, 2013). Furthermore, the contradiction is not as obvious to the Court as it was to the ALJ. Dr. Slavin, who evaluated plaintiff for a potential spinal cord stimulator, did not opine on plaintiff's ability to work, he did not attempt to identify plaintiff's work-related limitations, and he did not question whether plaintiff's spinal problems could have caused the symptoms that plaintiff reported to him: "her back pain . . . travels down the left leg feels like a fire sensation," she feels "both pressure and constant pain in that location," and she is "unable to stand for more than 5 or 10 minutes[.]" *See* [11-16] 1516-18. Absent a much more complete explanation of the supposed contradiction between Dr. Chang's and Dr. Slavin's opinions, and why such a contradiction would justify affording less than controlling weight to the opinions of the orthopedist who treated plaintiff for more than three years, it is impossible for the Court to meaningfully review this component of the ALJ's decision.

Finally, there is no merit to the Acting Commissioner's argument that the ALJ could properly discount Dr. Chang's opinions because they addressed only "the determination of disability," which "is reserved to the Commissioner to determine." [23] 9. Notably, the ALJ did not reject Chang's opinions on that ground, *see* [11-1] 66-67, and the Acting Commissioner's "attempt to supply a post-hoc rationale for the ALJ's decision runs contrary to the *Chenery* doctrine and is improper." *Troy B. v. Kijakazi*, Case No. 3:21-cv-50325, 2023 WL 374300, at \*5 (N.D. Ill. Jan. 24, 2023) (internal quotation marks omitted). In any event, "[w]hether a claimant qualifies for benefits is a question of law, but a medical opinion that a claimant is unable to work is not an improper legal conclusion. Indeed, ALJ's must consider medical opinions about a patient's ability to work full time because they are relevant to the RFC determination." *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). Accordingly, while "an ALJ need not simply accept a medical opinion that a claimant is unable to work," the ALJ "does have to consider it as relevant to the nature and severity of a claimant's impairments." *Maximus S. v. Saul*, No. 20 C 2261, 2021 WL 1172741, \*4 (N.D. Ill. Mar. 29, 2021); *see also Muzzey v. Berryhill*, Case No. 3:17-CV-796-JD, 2019

WL 697137, at *5 (N.D. Ind. Feb. 20, 2019) (ALJ erred by rejecting "treating physicians' opinions about [plaintiff's] inability to work" because physicians' "broader conclusions" were supported by "specific physical functional limitations they observed"). Therefore, the ALJ would not have been free to dismiss or discount Dr. Chang's opinions on the ground that they addressed an issue reserved to the Commissioner.

### 3. The ALJ Did Not Adequately Explain Why He Gave Dr. Chang's Opinions Only Little Weight.

Even apart from the ALJ's mischaracterization of some of Dr. Chang's records and his failure to even consider others, remand is warranted because the ALJ did not adequately explain why he gave Dr. Chang's opinions only little weight.

Indeed, the ALJ did not mention the length of Dr. Chang's treating relationship with plaintiff or how often he examined her. *See D.K.H.*, 2021 WL 1566768, at *3 (ALJ's failure to discuss length and nature of treating physicians' relationship with plaintiff warranted remand because "doctors had longstanding treatment relationships with Plaintiff, including performing surgeries on Plaintiff for his severe conditions," and it was "important for the ALJ to consider these factors and explain why they were outweighed by other evidence"). The ALJ did not give any explicit consideration to the fact that Chang performed three spinal surgeries on plaintiff, administered epidural injections, and prescribed pain medication. *See Jaquelyn L. v. Kijakazi*, No. 19 C 4223, 2022 WL 1620129, at *7 (N.D. Ill. May 23, 2023) (remanding based on ALJ's misapplication of treating-physician rule where ALJ "omitted any discussion of the fact that Dr. Rao was plaintiff's treating oncologist, the doctor who coordinated all of her cancer treatment from July 2016 through September 2017, including chemoradiation, chemotherapy and multiple surgeries"). It is very doubtful that the ALJ gave any consideration to the supportability of Dr. Chang's opinions because the ALJ provided only a cursory analysis of just three of Chang's treatment notes (and in doing so either mischaracterized what they said or faulted Chang for not including in those notes information that was contained elsewhere in the record). *See Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) ("supportability" of doctor's opinion refers to "whether a physician's opinion is supported by relevant evidence, such as medical signs and laboratory findings") (internal quotation marks omitted). The ALJ did purport to address the consistency of Dr. Chang's opinion with the record as a whole, but the Court has already explained why the ALJ's conclusions on this factor have no substantial support in the evidence. Finally, the ALJ did not consider that Chang was an orthopedic surgeon who treated plaintiff's spinal problems with spinal surgery, among other things. *See D.K.H.*, 2021 WL 2566768, at *5 ("If the ALJ was going to give less than controlling weight to Plaintiff's highly specialized treating physicians in favor of the State agency consultants, he had to consider this factor and explain why it was outweighed by other considerations."). Given the ALJ's near-total failure

8

to weigh Dr. Chang's opinions in accordance with the applicable regulation, remand is required.

\* \* \*

In sum, the ALJ did not provide good reasons for giving less than controlling weight to Dr. Chang's opinions, nor did he adequately explain how or why he decided that Chang's opinions were entitled to only little weight. Remand is therefore required. *See D.K.H.*, 2021 WL 2566768, at *3.

## Conclusion

Plaintiff's request to reverse and remand the SSA's decision is granted, and the Acting Commissioner's motion for summary judgment [22] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: February 14, 2023**